Lorenzo SANCHEZ–CALDERON, Juan Morales–Pascual, Vincente Sanchez–Martinez, Herminia Hernandez De Sanchez, Cresencio Sanchez–Martinez, Ana Sanchez–Galindo, Javier Beltran–Salas, Alejandro Munoz–Mancinas, Eriberto Lopez–Cruz, Salvador Valdovinos, Plaintiffs,

v.

MOORHOUSE FARMS, a partnership Roy D. Moorhouse, Kristi L. Moorehouse, Richard Moorhouse and Jorge Jacinto Vasquez, Defendants.

No. CIV. 95–750–HU.

United States District Court,
D. Oregon.

Sept. 25, 1997.

Arthur E. Schmidt, Oregon Legal Services Corp., Portland, OR, James A. Boon, Oregon Law Center, Portland, OR, for Plaintiffs.

Paul R.J. Connolly, Connolly & Doyle LLP, Salem, OR, for Defendants.

## OPINION AND ORDER

HUBEL, United States Magistrate Judge.

Plaintiffs seek various forms of relief under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") 29 U.S.C. § 1801 *et seq.*, the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, and the Oregon minimum wage law O.R.S. §§ 653.025, .055. Before the court is defendants' motion (# 63) for partial summary judgment; plaintiffs' cross-motion (# 73) for summary judgment; and plaintiffs' motion (# 78) to amend the complaint. Defendants also move to strike the claims of two of the plaintiffs for failing to appear at court ordered depositions and to strike plaintiffs' cross-motion for summary judgment because it was filed after the dispositive motion deadline imposed by the court. Both of these latter requests are denied. The record reveals that both parties' motions for summary judgment were filed after the January 17, 1997, deadline imposed by the court. Thus, the court will consider all of the parties' materials.

## BACKGROUND

Pursuant to Local Rule 220–9(a)–(f) the parties filed factual statements in support of their cross-motions for summary judgment. Pursuant to subsection (f) of that rule, facts in the moving party's concise statement, which are not specifically denied, are deemed admitted. Thus, the following facts are taken from the concise statements of the parties, the pleadings and other documents in the record.

Defendants Roy and Kristi Moorhouse were, at all relevant times, the owners of defendant Moorhouse Farms. The farm is currently owned and controlled by Richard Moorhouse, who is Roy's father. The individual defendants and the farm will be referred to collectively as defendants.[1]

In 1993, Moorhouse Farms raised a strawberry crop and contracted with Jorge Vasquez to supply workers for harvesting this crop. Vasquez negotiated this contract with

---

1. Defendant Jorge Vasquez has settled all claims against him and is no longer a part of the case. Additionally, all claims by Alejandro Munoz, Eri- berto Lopez and Salvador Valdovinos were settled. Javier Beltran's claim was dismissed.

Richard Moorhouse. At his deposition Vasquez testified that both Richard and Roy Moorhouse would tell him how work was. to be done "because they're like the owners of the work." Vasquez. dep. p. 59. He also testified that either Richard or Roy would inquire about Vasquez getting more workers for the farm, and then either man would take the workers to fill out an application and hire them.

Richard Moorhouse helped his son manage the farm during the nine month period that Roy and Kristi Moorhouse took ownership. Additionally, all of the equipment used for the 1993 strawberry harvest was owned by the elder Moorhouse and leased to Roy and Kristi. Richard Moorhouse re-took control of the farm in early 1994 because Roy and Kristi were unable to manage it properly. The farm is not fenced and sometimes as many as 175 workers were harvesting strawberries at a time.

The farm has a policy that any worker who is going to pick strawberries must go through an application process. This process includes filling out an application and signing pertinent federal tax and labor forms. Workers who are accepted are given an employee number. All plaintiffs having minimum wage or AWPA claims against defendants were registered as workers of the farm except three. The three who did not register with the farm are Juan Morales, Herminia Hernandez and Ana Sanchez. However, these three did in fact pick strawberries for the farm. The parties dispute whether anyone from the farm had knowledge of this fact.

Ana Sanchez is the daughter of plaintiff Cresencio Sanchez, who is also known as Maximo Cresencio Sanchez. Both picked strawberries in 1993, worked the same number of hours, and split their pay evenly. Because Ana Sanchez was not registered with the farm, all the work is recorded as if it

had been performed only by Cresencio Sanchez.

For the workweek ending on June 18, 1993, a check and wage statement was made out to Maximo Sanchez. The gross wages for this week were $93.52 for 10.5 hours of work. The corresponding picking ticket for this week shows 11.5 hours of work.[2] For the workweek ending on June 25, 1993, the gross wages were $331.52 for 33.5 hours of work. However, the combined picking tickets for Cresencio Sanchez show 36.5 hours worked.

Herminia Hernandez is the wife of Vicente Sanchez. They both picked strawberries at Moorhouse Farms in 1993 and worked the same number of hours. Because Herminia Hernandez was not registered with the farm, all their work is recorded as if it was performed only by her husband.

For the workweek ending on June 18, 1993, Vicente Sanchez was paid $85.40 in gross wages for nine hours worked. The corresponding picking tickets show 11 hours of work. For the workweek ending on June 25, 1993, the gross wages were $353.92 for 24.5 hours worked.[3] The farm admits the picking ticket for June 19, 1993, was not punched with a start time and thus, defendants are unable to determine hours for minimum wage purposes.

Juan Morales is the third un-registered worker. Lorenzo Sanchez, a registered worker, claims he and Morales worked together at the farm in 1993 and worked the same number of hours. Lorenzo Sanchez also claims a third, un-named man from Durango, Mexico worked on his picking ticket. The work of all three men was allegedly recorded on Lorenzo Sanchez' picking ticket. One of these tickets has the number 3 punched next to the number of pickers.

For the workweek ending June 18, 1993, Lorenzo Sanchez' gross wages were $167.72

---

**2.** At oral argument, defendants' counsel was asked if he agreed that plaintiffs' exhibit 2 was an accurate summary of the total hours and wages paid to all the plaintiffs. Defendants did not dispute the accuracy of this document. Because the actual picking tickets supplied to the court were unreadable, the court will use plaintiffs' exhibit 2, entitled "Redaction of Payroll

Information," for plaintiffs' wage and hour information.

**3.** Plaintiffs allege the actual hours worked were 26.5 plus any hours not recorded by defendants for work performed on June 19, 1993. This failure to record the hours is the basis for one of plaintiffs' AWPA claims.

for 10.5 hours of work. The picking ticket reflects 11 hours of work. For the workweek ending June 25, 1993 his gross wages were $505.40 for 32 hours worked, while the picking tickets show 36 hours worked.

No one from the farm specifically told Vicente Sanchez that his wife could not work on his picking ticket. Likewise, no one told Cresencio Sanchez that his daughter could not pick on the same ticket. In response to this, defendants state no one from the farm knew Ana Sanchez or Herminia Hernandez were picking, however, this is a disputed fact. Jorge Vasquez, the farm labor contractor, and now dismissed defendant, stated he knew of instances at other farms where family members worked off the same ticket, but he did not know of this specifically happening at Moorhouse Farms.

Before workers began picking for the day, they were given a picking ticket upon which the pounds of strawberries picked were recorded. While the farm policy was to have workers get a picking ticket in the morning before work began, the record shows that a small number of pickers did not get picking tickets until their strawberries were weighed.

Ana Sanchez, Cresencio Sanchez, Vincente Sanchez and Herminia Hernandez were transported between Jorge Vasquez' Woodburn, Oregon camp and the farm. The van allegedly belonged to a man named Constantino Lopez. Because the van had no rear passenger seats, the plaintiffs were forced to sit on the floor. Neither Jorge Vasquez, nor Moorhouse Farms had an insurance policy to cover the plaintiffs if they were injured traveling to or from work. Vasquez testified at his deposition that he never transported workers to or from Moorhouse Farms, but believed that all workers arrived on their own. In fact, defendants told Jorge Vasquez not to transport workers to or from the farm.

Lorenzo Sanchez stated in an affidavit that he and Juan Morales traveled in a van to Moorhouse Farms that he thought belonged to Jorge Vasquez. The van allegedly did not have rear passenger seats, causing people to sit on the floor during transport. These facts are disputed by defendants because of contrary testimony by Vasquez and because these plaintiffs did not appear at a court ordered deposition.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir. 1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

To avoid summary judgment, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of a scintilla of evidence in support of the non-mover's position will be insufficient; there must be evidence upon which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Summary judgment is not precluded simply because there is a dispute of some facts in a case." *School Dist. No. 1J, Multnomah Co., v. ACandS, Inc.,* 5 F.3d 1255, 1264 (9th Cir.1993), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994).

Summary judgment is not appropriate if the credibility of witnesses is at issue. *Securities and Exchange Comm. v. Koracorp Industries, Inc.,* 575 F.2d 692, 699 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58

L.Ed.2d 343 (1978). Credibility issues can only be resolved through an evidentiary hearing or a full trial. *Id.*

## DISCUSSION

### I. Motion to Amend

Plaintiffs' seek to add a federal minimum wage claim on behalf of Vicente Sanchez, with the supporting factual allegations. A motion to amend a complaint by leave of court "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). An amended pleading is to relate back to the date of the original pleading when "the claim ... in the amended pleading ar[ises] out of the conduct, transaction, or occurrence set forth ... in the original pleading...." Fed.R.Civ.P. 15(c).

■■■ "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The district court may use its discretion to deny a motion to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* Because none of the reasons for disallowing leave to amend are apparent, plaintiffs' motion for leave to amend the complaint is granted.

### II. Motions for Summary Judgment

#### A. Minimum Wage Claims

■■■ Four plaintiffs make claims under the FLSA: Herminia Hernandez, Cresencio Sanchez, Vicente Sanchez and Ana Sanchez. The same group, with the exception of Ana Sanchez, also make claims under the Oregon minimum wage laws.[4] Because factual disputes exist as to whether defendants employed the unregistered workers, and the true number of hours worked by all plaintiffs, both parties' motions for summary judgment are denied on the wage claims.

Federal law requires employers to pay employed workers a minimum of $4.25 per hour worked. 29 U.S.C. § 206(a). Oregon law requires employers to pay at least $4.75 per hour. O.R.S. § 653.025(3). However, both statutes turn on the question of whether the plaintiffs were employed by defendants. Defendants assert that because three of the plaintiffs did not register with the farm and hid their work from defendants, they were not employed for minimum wage purposes. If the three unregistered workers were not employed, then the other plaintiffs were paid the minimum wage under both acts. Defendants assert in their pleadings that even if the unregistered plaintiffs' hours are taken into account, all plaintiffs were paid the applicable minimum wages. Because factual disputes exist as to the true hours worked by plaintiffs, this latter contention cannot be decided on a summary judgment motion.

Additionally, at oral argument, defendants conceded that if the court divided the wages received by the registered workers, to account for the hours worked by the unregistered workers, there would be minimum wage violations by a very small amount, at least for the unregistered workers. Trans. of Oral Arg., pp. 42–43.

Defendants argue they are not liable for wages for the unregistered workers because they were not employed. To answer this question the court looks to the FLSA and its implementing regulations, as well as case law. The court undertakes this analysis mindful of the Supreme Court's admonishment that under the FLSA the term employ is to be interpreted expansively. *Hale v. State of Arizona,* 993 F.2d 1387, 1393 (9th Cir.1993) (en banc), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993). The FLSA provides that the term employ "includes to suffer or permit to work." 29 U.S.C. § 203(g).[5] "Work not requested but

---

4. Salvador Valdovinos also made a claim under Oregon law, but that claim was dismissed.

5. O.R.S. § 543.010(3) also states employ "includes to suffer or permit to work." Therefore, the same analysis that applies to the FLSA will hold true under the Oregon wage laws, because

the Oregon act is patterned after the FLSA. *Northwest Advancement, Inc. v. State of Oregon, Bureau of Labor, Wage and Hour Division,* 96 Or.App. 133, 136–37, 772 P.2d 934, *rev. denied,* 308 Or. 315, 779 P.2d 618 (1989), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990).

suffered or permitted is work time [if the] employer knows or has reason to believe that his continuing to work and the time is working time." 29 C.F.R. § 785.11.

In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

The Ninth Circuit has interpreted the term employ to mean " 'with the knowledge of the employer.' " *Lindow v. United States,* 738 F.2d 1057, 1060 (9th Cir.1984), (quoting *Fox v. Summit King Mines,* 143 F.2d 926, 932 (9th Cir.1944)). If the employer knows or should know of work being performed, they are liable under the FLSA. *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981). "However, where the acts of [a worker] prevent an employer from acquiring knowledge ... the employer cannot be said to have suffered or permitted the [worker] to work in violation [of the act]." *Id.* at 414–15.

Defendants claim the three unregistered plaintiffs hid their work from defendants in contravention of the farm's policy that family members could not work on one ticket. Plaintiffs dispute this contention. The parties also dispute whether this policy was communicated to all workers. Plaintiffs claim the farm knew that some tickets were used by more than one worker. They point to a picking ticket that had the number three punched next to the number of pickers. However, Kristi Moorhouse stated the farm did not use that portion of the picking tickets.

Whether defendants knew the unregistered plaintiffs were picking, and thereby benefitting the farm, is a disputed question of fact. It cannot be determined on a motion for summary judgment. Therefore, both parties' motions for summary judgment on all wage claims is denied. The inability to determine whether the unregistered plaintiffs were employed for purposes of the FLSA will also preclude summary judgment on some of plaintiffs' AWPA claims.

**B. AWPA Claims**

There are six alleged AWPA violations at issue in these cross motions: (1) Failure to make, keep and preserve proper payroll records, 29 U.S.C. § 1821(d)(1); (2) Failure to provide proper wage statements, 29 U.S.C. § 1821(d)(2); (3) Knowing provision of false information, 29 U.S.C. § 1821(f); (4) Use of an unlicensed farm labor contractor to provide migrant workers, 29 U.S.C. §§ 1841–42; (5) and (6) Causing transportation of workers in underinsured and unsafe vehicles, 29 U.S.C. § 1841(b)(1)(A) and (C), 29 C.F.R. 500.105(b)(3)(vi)(D), .121(b).

**1. Payroll Records**

Under the AWPA, agricultural employers are required to keep certain payroll information for each worker, such as the basis of paid wages, number of piecework units earned, hours worked, total pay and hours worked, withholdings and net pay. 29 U.S.C. § 1821(d)(1). Only those workers who are "employed" by an agricultural worker are protected. *Id.* Plaintiffs argue this section was violated in three ways.

First, plaintiffs argue that by lumping the section 1821(d)(1) information together for some plaintiffs violates the section. The court construes this argument to mean that defendants violated the act by including the work of the unregistered plaintiffs on other plaintiff's wage statements. Second, the provision was allegedly violated because the farm did not record any information for the unregistered workers. The third violation pertains to the farm's failure to record the number of hours that Vicente Sanchez and Herminia Hernandez worked on June 19, 1993.

The farm admitted that Sanchez' start time did not get punched on his picking ticket that day and therefore defendants cannot ascertain his hours for minimum wage purposes. Defendants do not challenge the last of these arguments in their reply to plaintiffs' cross-motion for summary judgment. Therefore, summary judgment in Vi-

cente Sanchez' favor is appropriate on this claim.[6]

Herminia Hernandez' claim for June 19, 1993, and the other two bases for plaintiffs' section 1821(d)(1) violations cannot be decided on summary judgment. The merits of these claims turn on whether the unregistered workers fall under the FLSA and AWPA's definition of employ. The AWPA gives that term the same meaning as given under the FLSA. 29 U.S.C. § 1802(5). Because that question cannot be resolved at this juncture, both parties' motions for summary judgment on these claims are denied.

### 2. Wage Statements

29 U.S.C. § 1821(d)(2) requires agricultural employers to provide each employee, at the end of each pay period, with the information required to be kept in subsection (1). Plaintiffs rely on the same facts outlined in their employment records section (§ 1821(d)(1)) to support their wage statements claims. An additional basis for asserting a violation of this subsection is the discrepancy between the hours reported on plaintiffs' wage statements versus the hours on the picking tickets.

As outlined in the factual background section, plaintiffs' various wage statements have less hours reported than the combined picking tickets for those time periods. At oral argument defendants conceded this claim in favor of the registered workers. Therefore, summary judgment is appropriate in favor of Lorenzo Sanchez, Vincente Sanchez and Cresencio Sanchez on their section 1821(d)(2) claims. *See* Trans. of Oral Arg., pp. 25, 34–35.[7]

As for the unregistered workers, summary judgment is inappropriate because it is factually unclear whether defendants employed them within the definition of the AWPA.

### 3. False Information

■ 29 U.S.C. § 1821(f) states "[n]o farm labor ... employer ... shall knowingly provide false or misleading information to any migrant agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), (c), or (d) of this section." This claim is based on defendants' alleged underreporting of hours on plaintiffs' wage statements, which plaintiffs argue was done with specific knowledge. Defendants argue this subsection only pertains to future terms, conditions or existence of employment. They cite no authority for this preposition and none was found by the court. The court finds this argument to be without merit.

An analysis of the four subsections listed by section 1821(f) shows that at least one subsection facially pertains to current activities. Section 1821(d)(2) requires employers to furnish certain information for each pay period. Thus, the plain language of the AWPA belies defendants' argument.

The legislative history of the AWPA also shows defendants are mistaken about section 1821(f)'s applicability. The House Report on the AWPA bill stated "the duty to provide truthful information shall be a duty which runs throughout the period beginning with recruitment and extending until the point that the records required to be maintained need no longer be maintained." H.R.Rep. No. 97–885, 97th Cong., 2d Sess. 16 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4547, 4562. *See also Barajas v. Bermudez*, 43 F.3d 1251, 1260 (9th Cir.1994) (noting importance and duration of AWPA's disclosure requirements). Therefore, defendants' motion for summary judgment will be denied on this claim. Plaintiffs' summary judgment motion is also denied because they offer nothing more than conjecture about defendants'

---

**6.** Defendants offered some opposition to this finding at oral argument by arguing that because they provided wage information to Sanchez the farm complied with the AWPA. Defendants argue the accuracy of the information is a section 1821(d)(2) issue. However, because defendants did not provide some of the information required in 1821(d)(1), summary judgment is appropriate for the day in question in favor of Mr. Sanchez.

**7.** At oral argument, defendants argued the section 1821(d)(2) violations, which they conceded, cannot also be a section 1821(f) violation. As will be discussed below, section 1821(f) punishes employers who knowingly provide false information required to be disclosed under section 1821(a)–(d). Defendants offered no authority for their argument that a violation of subsection (d)(2) cannot also be a violation of subsection (f). The court will not read such a violation into the AWPA.

knowledge of the hours discrepancy. Plaintiffs have not shown, as a matter of law, that defendants acted with knowledge involving the underreporting of hours.

### 4–6. Providing and Transporting Farm Workers

■ Plaintiffs claim defendants used Jorge Vasquez to transport them, or caused their transportation, to Moorhouse Farms, and that Vasquez was not licensed to do so by the United States Department of Labor. In addition, plaintiffs claim the vehicles allegedly used for the transportation were underinsured and lacking proper equipment. All three alleged violations turn on whether defendants caused Jorge Vasquez or another person to transport the plaintiffs. 29 U.S.C. § 1841(b)(1).

> No person shall utilize the services of any farm labor contractor to supply any migrant or seasonal agricultural worker unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized.

29 U.S.C. § 1842. The other two transportation violations pertain to insurance and seating in the vans.

The AWPA requires agricultural employers to "ensure that such [vehicles conform] to the standards prescribed by the Secretary under paragraph (2) of this subsection and other applicable Federal and State safety standards." 29 U.S.C. § 1841(b)(1)(A). The act also requires employers to have insurance or a liability bond that protects against damages caused while transporting agricultural workers. 29 U.S.C. § 1841(b)(1)(C). The applicable regulations require that any vehicle used to transport workers have a seat for each person. 29 C.F.R. § 500.105(b)(3)(vi)(D).

Defendants admit that neither Jorge Vasquez nor the farm carried any liability insurance to cover against damage or injury caused while transporting plaintiffs. However, defendants argue Vasquez needed none because he did not transport any workers. For this same reason, defendants argue, they are not liable for the alleged violations involving seats and insurance.

Lorenzo Sanchez stated in his affidavit that vans he "thought" belonged to Vasquez transported him and Juan Morales. Ana Sanchez stated that Constantino Lopez drove her, her father, Vincente Sanchez and Herminia Hernandez to Moorhouse Farms on several occasions, and the van used did not have rear seats. Plaintiffs offer no evidence that Lopez was in any way connected to Jorge Vasquez. Kristi Moorhouse stated in her affidavit that the farm told Vasquez not to transport workers when negotiating his 1993 contract. Additionally, Vasquez denies ever transporting any workers, and believed all workers arrived on their own.

Plaintiffs' transportation violations claims under the AWPA fail factually. The mere belief that vans belonged to Jorge Vasquez does not create a question of fact that can survive summary judgment. Furthermore, no connections exists between defendants and Constantino Lopez. Therefore, on these three claims, defendants' motion for summary judgment is granted.

### C. Liability of Richard Moorhouse

Plaintiffs assert two bases for holding Richard Moorhouse liable for any violations of the farm or Kristi and Roy Moorhouse. First they argue Richard Moorhouse is liable as a successor employer. They also argue Moorhouse was a joint employer with Roy and Kristi Moorhouse.

■ The court need not undertake joint employment analyses under each act because joint employment under the AWPA is also joint employment under the FLSA. 29 C.F.R. § 500.20(h)(4)(i). The FLSA definition of employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). In assessing whether a joint employment situation exists, the court looks to "all the facts in the particular case." 29 C.F.R. § 500.20(h)(4)(i). "If the facts establish that two or more persons are completely disassociated with respect to the employment of a particular employee, a joint employment situations does not exist." Id.[8]

---

**8.** Further evidence of the relationship between joint employment under the AWPA and the FLSA is found in the AWPA's regulations. See 29

C.F.R. § 500.20(h)(4)(ii) ("In determining whether such a joint employment relation exists the

The AWPA regulations list several non-exclusive factors to aid courts in determining whether a joint employment situation exists:

(A) The nature and degree of control of the workers;

(B) The degree of supervision, direct or indirect, of the work;

(C) The power to determine the pay rates or the methods of payment of the workers;

(D) The right, directly or indirectly, to hire, fire, or modify the employment conditions of workers;

(E) Preparation of payroll and the payment of wages.

29 C.F.R. § 500.20(h)(4)(ii).

The Ninth Circuit recently spoke on the joint employment question in the FLSA and AWPA areas. *See Torres–Lopez v. May,* 111 F.3d 633 (9th Cir.1997). In addition to the non-exclusive regulatory factors outlined above, the *Torres–Lopez* court articulated eight additional factors that courts have used to decide when joint employment exists. *Id.* at 640. The court highlighted the importance to the joint employment evaluation of an employer's ownership of the equipment or facilities upon which the employment relationship existed. *Id.* at 640–41.

██ As with worker protection statutes in general, the definition of employer under the FLSA is to be read broadly to give effect to the acts' remedial purposes. *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983). While reviewing all the facts of the particular situation, the Court has instructed that "[t]he touchstone is 'economic reality.'" *Id.* (quoting *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)). The four factor test used by the district court in *Bonnette,* and affirmed by the Ninth Circuit, was as follows: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 1470; *see also Hale,* 993 F.2d at 1394.

██ Judge Panner previously found under the FLSA that a "person may be an employer but not have an ownership interest in the employing business." *Estevez v. Hayes,* 1990 WL 605076 (D.Or.1990). *See also Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194–95 (5th Cir.), *cert. denied sub nom. Alberding v. Donovan,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983).

Considering the remedial purposes of both the FLSA and the AWPA, the regulatory and non-regulatory factors, and the expansive definition of employer under the acts, the court finds that under the facts of this case, Richard Moorhouse employed the plaintiffs. Most telling in this conclusion is the fact that Richard Moorhouse owned the farm from 1954 to the present, with the exception of the nine month period when he turned over operations to Roy and Kristi Moorhouse. When Roy and Kristi were unsuccessful in this venture, Richard took back control of the farm. The facts also show that even within this nine month period he helped Roy manage the farm and negotiated Jorge Vasquez' 1993 contract to supply workers.

There is also the testimony of Jorge Vasquez that indicated he believed both Roy and Richard were his bosses. Richard also owned all the land and equipment used for the 1993 strawberry harvest. The deposition testimony of Vasquez also indicates that either Roy or Richard Moorhouse would make a determination that the farm needed more workers at any particular time. These facts support the conclusion that Richard Moorhouse was an employer for purposes of the FLSA and AWPA. This conclusion recognizes "the economic reality of the particular relationship between the farmworker and the alleged joint employer." *Torres–Lopez,* 111 F.3d 633 at 641. He will, therefore, be jointly liable for any violations proven under those acts. In this respect, plaintiffs' motion for summary judgment is granted.

C. In pari delicto defense

██ Defendants assert in their motion for summary judgment that some of the

courts have cited the broad definition of employ in the [FLSA] which includes to suffer or permit to work.").

plaintiffs should be foreclosed from any recovery on their claims by the common law doctrine of in pari delicto. The court did not find, and the parties did not provide, any cases applying this doctrine to FLSA or AWPA cases.

In *Bateman Eichler, Hill Richards, Inc. v. Berner,* the Supreme Court analyzed the in pari delicto doctrine in a private securities fraud case. The court stated,

a private action for damages in these circumstances may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.

472 U.S. 299, 310–11, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). This doctrine is "rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl,* 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). This case also discussed the applicability of in pari delicto in securities law cases when the plaintiff had some role in the wrongdoing.

The *Pinter* court stressed the level of culpability that a plaintiff must possess before their remedies will be foreclosed for their part in the alleged wrongdoing. The Court stated: "The plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit.... Unless the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater, the in pari delicto defense should not be allowed, and the plaintiff should be compensated." *Id.* 486 U.S. at 636. The Court also admonished that "a plaintiff's recovery may be barred only if preclusion of suit does not offend the underlying statutory policies." *Id.* at 637–38.

Before either of the above Supreme Court cases were decided, the Ninth Circuit decided the applicability of in pari delicto in an antitrust action. *Javelin Corp. v. Uniroyal, Inc.,* 546 F.2d 276 (9th Cir.1976), *cert. denied,* 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977). The Ninth Circuit articulated a somewhat similar test to that stated by the Supreme Court:

A plaintiff is barred from recovery only when the illegal conspiracy would not have been formed but for the plaintiff's participation. To satisfy this test, the jury must necessarily find that the degree of participation of the plaintiff must be equal to that of any defendant and a substantial factor in the formation of the conspiracy. The instigator of an illegal scheme clearly is barred under this test. Whether founding members of a conspiracy are barred is a question of fact for the jury based on the above test. The "but for" standard places a high burden of proof upon any defendant seeking to bar the plaintiff's suit on the basis of joint participation.

*Id.* at 279.

Defendants in this case argue the doctrine should be applied to bar the claims of the unregistered workers because they did not register with the farm and may have avoided immigration and internal revenue laws in the process. In supplemental briefs, defendants argue the doctrine should also apply to bar the claims of registered workers because "their work partners" failed to register with the farm, which in turn was a violation of state and federal law. Plaintiffs counter with the argument that to apply the in pari delicto doctrine to this case would undermine the remedial efforts of the AWPA and FLSA.

Defendants have not proven that plaintiffs "bear at least substantially equal responsibility for the violations [they] seek to redress." *Bateman Eichler,* 472 U.S. at 310–11. Furthermore, the court believes that to apply the doctrine at this stage of the case would interfere with the highly remedial nature of both the FLSA and AWPA. On the record before the court the in pari delicto doctrine will not be applied. The court is willing to revisit this issue if the facts proven at trial show that the in pari delicto doctrine is applicable to this case.

## CONCLUSION

Based on the foregoing discussion, plaintiffs' motion (# 78) to amend is GRANTED; defendants' motion (# 63) for partial summary judgment is GRANTED in part and DENIED in part; and plaintiffs' cross mo-

tion (#73) for summary judgment is GRANTED in part and DENIED in part.